**STATE ex DOMALSKI, Relator v. GALLITZ etc. et, Respondent.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19636. Decided April 16, 1945.

Walter & Haverfield, Cleveland, for relator.

Locher, Green & Woods, Cleveland, Squire, Sanders & Dempsey, Cleveland, for respondent.

## OPINION

By SKEEL, P. J.

The relator filed this action in Quo Warranto in this court.

The relator was elected to the office of Clerk of the Village of Cuyahoga Heights, Ohio, at the General Election held according to law on November 2, 1943. At the time of his election, the defendant George J. Gallitz was the incumbent of such office. The Board of Elections on or about November 24, 1943, mailed to the relator a certificate of election dated Nov. 9, 1943, and which was received by him on or before December 5, 1943. On December 27, 1943, the Mayor of the Village wrote a letter to the Relator as follows:

"Enclosed is an oath of office, affidavit form, which should be properly signed and sworn to. Kindly return this form to me at your earliest convenience.

  (signed) I. G. Kennedy,
    Mayor of the Village of Cuyahoga Hts."

The relator delivered the oath of office, properly executed and the bond, to the Mayor of the Village on December 30, 1943.

On December 29, 1943, the Mayor of the Village called a special meeting of the village council which under suspension of the rules passed the following resolution (denominated No. 1483-82):

"A resolution finding and declaring a certain office to be vacant.

BE IT RESOLVED by the Council of the Village of Cuyahoga Heights, State of Ohio, that it is hereby found and determined that Henry J. Domzalski, elected to the office of Clerk of the Village of Cuyahoga Heights, at the general election on November 2, 1943, has failed to give bond required of him as such officer for more than a period of ten days after he had been notified of his election and under and pursuant to the provisions of §4242 GC, the office of said Henry J. Domzalski as such Clerk of the Village is hereby declared vacant.

This resolution, by reason of its subject matter, is hereby declared to be a measure necessary for the immediate preservation of the public safety and welfare and shall therefore take effect immediately upon its passage."

On December 31, 1943, the Clerk of the Village returned the oath of office and the bond to the relator. The first business day of the year, 1944, was Monday, January 3, on which day the relator again presented the oath of office and the bond to the Mayor. The reason given by the Mayor for his refusal to receive the oath of office and the bond was that the office had been declared vacant by the Council. The respondent has, since January 1st, 1944, continued to occupy the office of Clerk of said Village, to which the relator had been elected, to the exclusion of the relator, although the relator has been willing and able to accept the office and perform the duties thereof and this proceeding seeks to establish relator's title thereto.

It has been stipulated that by village ordinance it is required that the clerk execute a bond to the village conditioned on his faithful discharge of the duties of the office.

**Sec. 7 GC** provides:

"A person elected or appointed to an office who is required by law to give a bond or security previous to the performance of the duties imposed on him by his office, who refuses or neglects to give such bond or furnish such security, within the time and in the manner prescribed by law, and in all respects to qualify himself for the performance of such duties, shall be deemed to have refused to accept the office to which he was elected or appointed, and such office shall be considered vacant and be filled as provided by law."

Sec. 4242 GC provides:

"The council may declare vacant the office of any person elected or appointed to an office who fails to take the required official oath or to give any bond required of him, within ten days after he has been notified of his appointment or election, or obligation to give a new or additional bond, as the case may be."

The statutory requirements of §7 **GC supra**, that a bond must be executed and the oath of office taken within a required time after being notified of his election, by one elected to public office, and providing that if he shall fail to do so he "shall be deemed to have refused the office to which he was elected and such office shall be considered vacant and be filled as provided by law" is by the great weight of authority directory and not mandatory.

The rule is well stated in Annotated Cases, 1915 D, page 413:

"The courts are not in accord as to the nature of statutes prescribing the time within which public officers are required to qualify. The decisions vary according to the wording of the particular statutes in question, but in the majority of the jurisdictions the rule has been laid down that in the absence of a provision expressly declaring that the failure to take the oath or give the bond required shall operate ipso facto to vacate the office, such a statute is merely directory and the officer may afterwards comply with the requirements of the statute, unless a vacancy has actually been declared by the proper legal authority."

In the case of **State v Tool,** 4 Oh St 553, the defendant had been elected County Treasurer. Swan's Statute, 1009, Sec. 2, provided:

"That each county treasurer previous to entering on the duties of his office shall give a bond * * * * * and shall also take and subscribe an oath or affirmation to be endorsed on said bond * * * and the said bond so endorsed shall be deposited with the Auditor of the County * * * * * ."

Section 3 provided in part:

"That if any person elected to the office of County Treasurer shall not give bond and take the oath or affirmation, as required by the preceding section, on or before the first Monday of June next after his election, his office shall be considered vacant."

The State challenged the right of the defendant to fill the office. The defendant in showing by what authority he held the office, pleaded among other claims that on the first Monday of June, 1855, he executed and delivered to the County Commissioners a bond conditioned according to law in the penal sum of $80,000.00 with twenty-four freehold sureties; that the Commissioners on said first day of June 1855, neither accepted nor rejected the bond but continued their session until the next day, being the next day after the said first Monday of June, 1855, and then accepted and approved the said bond; that the said Tool then and there, on the same day, took and subscribed the oath required by the statute and caused the same to be endorsed on the bond thus accepted, by

the commissioners. * *. To the claim as thus alleged, the state demurred. The court in ruling on the demurrer said:

"Where a treasurer-elect on the first Monday of June next after his election, executed and delivered a bond to the Commissioners of the county with sufficient surety according to the statutes and the commissioners on that day neither accepted nor rejected the bond, but on the next day approved it, and the treasurer immediately thereafter took the necessary oath and had the same endorsed on the bond, he thereby became the legal treasurer of the county."

In State v Ruff, 4 Wash. 254, the court declaring the statute providing that on failure to qualify within the prescribed time the office "shall become vacant" to be directory, said:

"It is the election which gives the right to the office and the qualification is only an incidental requirement for the protection of the public. If the provisions for such qualification are not timely complied with, the public can protect itself by declaring a vacancy and filing the same by appointment, but until such acts have been done, the force of the election has not been exhausted, and upon a compliance with the incidental duty of qualification is given full force."

In McQuillin Municipal Corporations, Vol. 2, Sec. 495 at page 192, the rule is stated as follows:

"* * * * * If the taking of the oath is by the terms of the law made a condition precedent to performing the function of the office it would seem that the officer has no right to the office until the oath is taken and it has been said that failure to take the oath within the prescribed time renders the office vacant. However, a law providing merely that the oath shall be taken within a specified time may be directory only and a failure to take the oath in time will not work a forfeiture of the office and the officer does not lose his powers and is at least a de facto officer * * * ."

The citations listed in supporting the rule that a law setting a specific time within which the oath must be taken is directory and not mandatory, includes the case of **State ex rel v Findlay, 10 Ohio 51.** In Dillon on Municipal Corporations, Sec. 344, page 678, the same conclusion is reached. We quote:

"Public officers are usually required to take an oath of office, and those entrusted with money or property are also generally required to give bond and sureties for the faithful performance of their duties. * * * Statutes requiring an oath of office and bond are usually directory in their nature; and unless the failure to take the oath or give the bond by the time prescribed is expressly declared, ipso facto, to vacate the office, the oath may be taken or the bond given afterwards. * * * * * *"

In Throop on Public Officers, Sec. 173, page 184 it is stated:

"Where a statute fixed the time, within which the official oath must be taken, or the official bond given, the weight of the American authorities is decidedly in support of the doctrine, that the provision respecting the time is directory, although the statute declares that the office is forfeited by default, and that unless the statute expressly declares that failure to take the oath or to give the bond, by the time prescribed, ipso facto vacates the office, the oath may be taken and the bond given at any time afterwards, before judgment of ouster upon an information in the nature of a quo warranto, or other legal declaration that the office is thereby vacated."

State ex rel Sawyer v Pollner, 18 C. C. 304, the third syllabus:

"* * * * * * * The requirement of oath or bond or any other thing the statute may require, although the statute may be explicit, is merely directory language and is not mandatory and is not a condition precedent to his entering the office."

On page 311 the court says:

"The authority seems to be almost unanimous that in a statute like this, and where the same things are required to be done by the mayor—the law seems to be quite unanimous that he may merely enter upon the office by declaring himself the officer and go to work and perform the duties and that the user with the election makes him the officer and that both of them are required and the bond also, yet they are not conditions precedent to his entering upon his office. This has been found to be almost a necessity in order that people may carry out their will, because there are so many things that may intervene not to allow an officer to take the oath or file his bond. It becomes almost necessary that the will of the

people may not become prostrated and that the courts have recognized that and from that necessity has grown up the universal ruling that the occupier of the office, that the user of the office has determined whether the party is the officer that he pretends to be."

In Ohio therefore it seems clear that the proper interpretation of the provisions of §§7 and 4242 GC is that they are directory and not mandatory. The failure of relator to qualify before the expiration of ten days after notification of his election did not ipso facto cause the office to become vacant. Some act is necessary on the part of the proper authority to declare an office vacant when the person elected has failed to qualify.

Sec. 4242 supra provides:

"The council may declare vacant the office of any person elected or appointed to an office who fails to give any bond required. * * * * *,"

within the time fixed by law. But this power that is granted to the council by this provision of the statute cannot be used in an arbitrary manner and in such a way as to nullify the choice of the electors.

The relator was in the process of complying with the statute. He delivered the necessary bond and oath of office to the Mayor on December 30th after having previously received the necessary forms from the Clerk and the Mayor on or shortly before the 29th of December, 1943. The Mayor then called a special meeting of the Council on the evening of Dec. 29, 1943, for the purpose of declaring the office vacant.

At this special meeting the council passed the resolution vacating the office as an emergency measure. Upon the face of the record no emergency was presented and in declaring the office vacant as an emergency measure the council acted arbitrarily and its conduct in this regard constituted an unwarranted attempt to set at naught the will of the majority of the electors of the village.

In the case of **State ex rel Christiansen v Larson, 110 Oh. St. 413,** one Hutchinson had been elected to the Council of the village of Rocky River, Ohio, at the November election of 1921, qualified and started to serve out his term of two years. At the fall election of 1923 he was reelected but died before he had been qualified for the term beginning January 1, 1924. Thereupon, at the first meeting following Hutchinson's death the Council on Nov. 28, 1923, elected Christiansen to fill out the

unexpired term. On Jan. 2, 1924, the Council declared the office vacant and appointed Larsen to fill the vacancy, who thereupon qualified and entered upon the duties of the office. Christiansen then brought an action in quo warranto seeking to oust Larson and asking to be adjudged to be entitled thereto, claiming no successor had been elected, qualified and installed.

The court held in part that the appointment of Christiansen was under the authority of §4236 GC which limited the power of the Council to fill the vacancy by election for the unexpired term. The court then says:

"There was no vacancy of the place to which Hutchinson was elected at the November, 1923, elections until the beginning of the term for which he was elected. **State ex rel v Dahl, 55 Oh. St. 195,** 45 N. E. 56. The action taken at that time by council was authorized by the provisions of §4242 GC * * * * * * * *."

It is clear, therefore, that when the council met on December 29, 1943, there was no vacancy in the office of Clerk and therefore the Council was without power to declare the office vacant.

Inasmuch as the statutory requirement that an elected officer furnish a bond within ten days after being officially notified of his election, is directory and not mandatory, and further that on December 30, 1943, before the beginning of his term of office the relator tendered an executed oath and a proper bond, and the only reason assigned by the village officials for refusing and returning the oath and bond was wholly without merit, the writ is allowed as prayed for.

MORGAN, J., concurs.
LIEGHLEY, J., dissents.