**Ok J. LUGINBUHL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 32A01–8610–CR–289.

Court of Appeals of Indiana, First District.

May 13, 1987.

Rehearing Denied June 16, 1987.

Carr L. Darden, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Ok J. Luginbuhl appeals her conviction of promoting prostitution, a class C felony. She essentially raises two issues on this appeal:

(1) Whether the record contains sufficient evidence that Luginbuhl procured Moon K. Doom for purposes of prostitution.

(2) Whether the trial court erred in allowing the State to introduce evidence of Doom's conviction of prostitution.

We affirm.

The record reveals the following facts favorable to the verdict: Russell, a vice detective, went to a health spa where he paid Luginbuhl for a massage. Russell initiated conversation with Luginbuhl during the massage regarding the possibility of her performing oral sex on him. Luginbuhl was not interested; however, Russell persisted. When Luginbuhl asked how much Russell would be willing to tip, he removed sixty-five dollars from his wallet. Luginbuhl took the money and left the room, agreeing to check with the other girl. Thereafter she returned with another female, Moon Doom, who subsequently began to fondle Russell's genitals. An arrest

occurred at that point. Additional facts will be stated as required.

## I.

### Sufficiency of Evidence

Luginbuhl contends that the trial court erred in denying her motion for a directed verdict and that the evidence is insufficient to support the verdict because the State failed to prove the *actus reus* of the crime as charged by the State. The State alleged by information that Luginbuhl "knowingly or intentionally procured Moon K. Doom for Dep. Randy Russell for the purpose of prostitution."

A directed verdict is proper only where there is a total lack of evidence on some essential issue or where there is no conflict in the evidence and it allows only an inference in favor of the innocence of the accused. Where there is sufficient evidence to sustain a conviction on appeal, an earlier ruling denying a motion for directed verdict cannot be error. *Vincent v. State* (1986), Ind., 489 N.E.2d 49, 53; *Pearson v. State* (1982), Ind., 441 N.E.2d 468, 475.

Upon a review for sufficient evidence, this court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses. *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Upon a claim of insufficient evidence, however, it does become our duty to examine the evidence closely, not with a view toward resolving conflicts thereon, but for the purpose of determining whether or not, after resolving all reasonable doubts in favor of the verdict, it may be said that, upon such evidence, a reasonable man could have reached such a verdict, beyond a reasonable doubt. *Woods v. State* (1980), 274 Ind. 624, 413 N.E.2d 572, 575.

Luginbuhl relies upon the supreme court's decision in *LaMar v. State* (1953), 231 Ind. 508, 109 N.E.2d 614 as a basis for asserting that the evidence was insufficient to support her conviction. She contends the evidence failed to show she did anything to "bring about," "effect" or "cause" the act of prostitution committed by Moon Doom. Luginbuhl's argument assumes that by use of the word "procure" in the statute at issue in this case, the legislature contemplated a showing of conduct designed to effectuate the act of prostitution. We do not believe the *LaMar* decision compels us to attribute such a narrow meaning to the act of procuring in the context of the statute at issue here, IND.CODE 35–45–4–4(2).

In *LaMar v. State*, 109 N.E.2d 614, the court considered the meaning of the word "procure" in the context of a former statute, § 10–4211, Burns' 1942 Repl., defining the offense of pandering. Citing various definitions of the word "procure", the court held that the evidence was insufficient to show that LaMar "*unlawfully and feloniously* procure[d] one Diane Hamilton, as an inmate for a house of prostitution...." The evidence indicated that Hamilton, a prostitute, had initiated her relationship with LaMar. Hamilton contacted LaMar and arranged for the payment to LaMar of monies received.

By focusing on the acts undertaken by Hamilton, the court highlighted LaMar's passive role in the arrangements between herself and the prostitute. Since it was the conduct of LaMar which was at issue in the case, the decision elucidates that submissive conduct will not suffice; the State must show more than conduct evincing a permissive disposition toward prostitution to show the procurement of another person.

Two of the definitions incorporated in the *LaMar* decision illustrate the broad range of behavior considered by the courts to be descriptive of an act of procurement.

"... to 'procure' is to initiate a proceeding to cause a thing to be done; to instigate; to continue, bring about, effect or cause. * * * To persuade, induce, prevail upon,

or cause. * * * To 'procure' an act to be done is not synonymous with to "suffer" it to be done."

*LaMar v. State,* 109 N.E.2d at 618 citing Black's Law Dictionary, 3d Ed., at 1437.

" 'Procure', as used in these statutes, means to acquire or get, and it necessarily implies the use of persuasion, solicitation, encouragement, and assistance in achieving the unlawful purpose; but the use of promises, threats, violence, or fraud are not necessarily included within the term."

*LaMar, supra* citing 73 C.J.S. at 236.

IND.CODE 35–45–4–4(2) (Supp.1978) establishes the essential elements of the crime of promoting prostitution as charged by the State against Luginbuhl:

A person who ...

(2) knowingly or intentionally procures, or offers or agrees to procure, a person for another person for the purpose of prostitution.

■ Thus, while the State could have shown that it was Luginbuhl's conscious objective to procure Doom for Russell for purposes of prostitution, the State need only show that Luginbuhl was aware that there was a high probability, that she was procuring Doom for Russell and that she was doing so for the purpose of prostitution. *See* I.C. 35–41–4–2.[1]

■ Reviewing the record in the present case, we find direct evidence that Luginbuhl actively furthered the act of prostitution which occurred, and strong circumstantial evidence that Luginbuhl knowingly solicited Doom for Russell and actually brought about or effected the criminal offense. Luginbuhl did more than permit the criminal activity; she facilitated the act by checking out the patron, soliciting the "tip" and arranging for Doom to meet with Russell. Luginbuhl told Russell that she would be able to get him oral sex for sixty-five dollars.

Moreover, Doom knew when she met with Russell what conduct was expected. In light of the fact that Doom immediately began to perform an act of fondling when Luginbuhl left the room, and Luginbuhl's statement to Russell that "the other girl might", we believe that it was reasonable for the jury to infer that Luginbuhl knew Doom was receptive to prostitution, and prevailed upon Doom to engage in the prohibited conduct.

Though reasonable men may have differed in reaching the verdict, this court need not find that the circumstantial evidence in the case overcomes every reasonable hypothesis of innocence. *Lovell v. State* (1985), Ind., 474 N.E.2d 505, 507. Rather, when the evidence presented is circumstantial in nature, it is only necessary that an inference reasonably tending to support a finding of guilt can be drawn from the evidence presented. *McCraney v. State* (1983), Ind., 447 N.E.2d 589, 590. Accordingly, we conclude that the State presented sufficient evidence to sustain the verdict. A denial of the defendant's motion for a directed verdict was therefore also proper.

II.

Evidence of Prostitution Conviction

■ Luginbuhl claims that the trial court erred by admitting Russell's testimony that Doom had been convicted of prostitution. She argues that the evidence was irrelevant, immaterial and that the probative value of the evidence was substantially outweighed by the likelihood that the evidence would induce the jury to decide the case on an improper basis. She also claims the evidence was hearsay.[2]

---

1. A person commits the offense of prostitution if he or she knowingly or intentionally

(1) performs, or offers or agrees to perform, sexual intercourse or deviate sexual conduct; or

(2) fondles, or offers or agrees to fondle, the genitals of another person;

for money or other property. I.C. 35–45–4–2 (Supp.1979). "Deviate sexual conduct" means an act involving a sex organ of one person and the mouth or anus of another person. I.C. 35–41–1–9(1) (Supp.1984).

2. Luginbuhl appears to argue that the act of deviate sexual conduct was hearsay because it occurred when Luginbuhl was not present. We find no merit in this contention. Hearsay evidence is testimony by a witness in court relative

Evidence is relevant when it throws or tends to throw light on the guilt or innocence of an accused even though its tendency to do so may be slight. *McPhearson v. State* (1969), 253 Ind. 254, 253 N.E.2d 226. The most accepted test of relevancy is whether the evidence offered renders the desired inference more probable than it would be without the evidence. *Hill v. State* (1978), 267 Ind. 480, 371 N.E.2d 1303. A ruling on the relevancy of evidence is a matter entrusted to the trial judge, who has broad discretion. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 579; *Barnes v. State* (1975), 263 Ind. 320, 330 N.E.2d 743. In addition, evidence of crimes or misconduct by another is admissible if it directly relates to the totality of the circumstances surrounding the defendant's crime. *Hudak v. State* (1983), Ind.App., 446 N.E.2d 615, 617; *Smith v. State* (1972), 152 Ind.App. 654, 284 N.E.2d 522, 525.

In the present case evidence of Doom's criminal activity bears a direct relation to Luginbuhl's procurement of her for purposes of prostitution. While it was not necessary that the State show that an act of prostitution actually occurred, *Mure v. State* (1984), Ind.App., 468 N.E.2d 591, *trans. denied,* Doom's act of deviate sexual conduct had a strong tendency to prove that a knowing procurement had been accomplished. In this context, deviate sexual conduct was an essential element of the offense of prostitution. The fact that the act actually occurred makes the inference that Luginbuhl knowingly procured Doom for purposes of prostitution more probable than it would be without the evidence. Furthermore, it was the trial court's responsibility to weigh the probative value of the evidence against the prejudice to the defendant. Luginbuhl has not shown that the trial court manifestly abused its discre-

tion in this regard. *See, Wallace v. State* (1985), Ind., 486 N.E.2d 445, 460.

Judgment affirmed.

NEAL, and YOUNG, JJ., concur.

to an extrajudicial *declaration* by another which is offered to prove the truth of the facts asserted by the declarant. *Roberts v. State* (1978), 268 Ind. 348, 353, 375 N.E.2d 215, 219. (Emphasis added.) While we recognize that an act may fall within the hearsay rule because the act is done solely for purposes of expression and is the equivalent of a verbal assertion, McCOR-

MICK, Handbook on the Law of Evidence § 250 at 596 (1972), the State introduced evidence of Doom's conduct for purposes of showing only that the act in fact occurred. *See, Bean v. State* (1978), 267 Ind. 528, 535–536, 371 N.E.2d 713, 715. In addition, the conduct at issue involves no intent to communicate a fact sought to be proved.